Thank you, Your Honor. I appreciate having a podium that I can raise. Your Honor, in this case, I'd first like to address the standard to be applied in this case, the standard for review under Polito v. Crones. That standard, Your Honor, requires that in a case such as this where there is a problem alleged in a habeas corpus case in regard to a jury instruction that court is to review under Polito to see if there is a substantial and injurious effect on the jury's verdict that can be determined. In this case, Your Honor, I'll harken back to a case that was decided after the reply brief was submitted. This was Ayala v. Wong, 693 Fed 3rd 945. This was decided in August of 2012. In that case, the court said, If one cannot say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that the substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result apart from the phase affected by the error. It is rather even so whether the error itself had substantial influence. It is, of course, the appellant's position in this case that the error here did have substantial influence. As the court is aware from the briefing, the error here involved an instruction on the charging portions of the information filed in the state case. This is a case in which the defendant was charged with lewd conduct. The trial wasn't very complicated, though, was it? No, Your Honor, it was not very complicated. Just two witnesses, basically. That's correct, Your Honor. The transcript was very short. I read most of it. Yes, it was very short. And the evidence at trial was pretty much consistent with the main allegations in the information. Except for one important point, Your Honor. The appellant's position is that the charging instruction, that is, jury instruction number 18, which is quoted both in brief of the appellant and brief of the appellee, substantially amended the information by adding an undefined term. Counsel, let me ask you a question on that, if I may. What evidence and testimony of the victim suggested any type of other form of lewd conduct beyond the conduct that was specified in the initial information? Your Honor, as is set out in the brief of appellant and then also in the brief of appellee, that language or that testimony had to do with fondling of the breasts and French kissing. In this instance, that is the crux of the problem or part of the problem as the appellant sees it. The reason being is lewd conduct is not defined beyond oral genital contact, manual genital contact, and genital-genital contact. In this case, instruction number 18 stated that if you find these things, you can find the defendant guilty of the charges set forth in the information. But then it added this catch-all phrase of any other lewd conduct. As is pointed out in the brief. Are you saying that he could have been convicted by the jury because of French kissing? Your Honor, without a definition of lewd conduct, that is possible. Of course, there is also an allegation of fondling of the breasts. Yes, that is possible. That's exactly what the appellant's position is in regard to this. When they argued the case before the jury, there was no argument about French kissing or fondling. That's true. There was not, Your Honor. But there was the evidence that was admitted at trial, and the evidence expanded the proof beyond what was charged in the information. So then what's the standard that we have to apply there? There has to be a substantial injurious effect of the error. That's right. And you've cited a case where it sounds sort of like if, you know, if we're not sure the jury wasn't swayed by the error, we should give relief. As a practical matter, what are we supposed to do? How do we frame the prejudice inquiry? Your Honor, I would go back to the Pulido case and just cite to the holding in that case that under Brecht, an instructional error is prejudicial and habeas relief is appropriate. If, after reviewing the record as a whole, we conclude there was a substantial and injurious effect or influence on the verdict, or if we are left in grave doubt as to whether there was such an effect, then it goes on to say grave doubt is the unusual circumstance wherein the judge has mined the matter so evenly balanced that he feels himself in virtual equipose to the harmlessness of the error. Then it goes on to say we must take into account what the error meant to the jury, not singled out and standing alone, but in relation to all else that happened. In this case, Your Honor, there were uncertified issues submitted, and I only speak to those at this point to point out some of the other things that occurred in this trial. One of the uncertified issues that was submitted was ineffective assistance counsel. After 18 months, this case went to trial and only two witnesses were called. Also in regard to that, when there were only two witnesses called and one testified to the things that were alleged in the information and the other denied them, there was an instance of prosecutorial misconduct where clearly the prosecutor vouched for the veracity of the witness, saying words to the effect, you must believe her because I believe her. Counsel? Yes. On those uncertified issues, I couldn't find any evidence that they were ever pursued in state court, so aren't they procedurally defaulted? Your Honor, as is set out in the briefing, there is an Idaho procedural rule that requires a motion for post-conviction relief that if there is going to be a summary dismissal of the case, 20 days' notice must be given to the defendant, and that is a summary dismissal upon the court's decision. In this instance, that notice wasn't given. It was cited to authority in the brief concerning the fact that standard known state procedural rules can give rise to bringing up these issues later, even though they are not certified, and that's more fully set out in my brief, Your Honor, in that portion of it that leads into the ineffective assistance of counsel claim. All right. Thank you. Mr. Dawkins, do you want to save your time for a reply or a rebuttal? It's up to you. Yes, Your Honor. I would like to save a little time for that, and just saving a minute in the end, again, I'd like to stress that here there was the unusual circumstance where the prosecutor vouched for the veracity of the only state's witness. Thank you, Your Honor. Thank you. For the appellee, we have Mr. McKinney. Thank you, Your Honor. May it please the Court, I'm John McKinney, Deputy Attorney General for the State of Idaho, representing Respondent Jones in this case. I'm a little unclear as to whether or not the challenge is still being made in asserting a constructive amendment in this case. It sounds like the argument has focused namely on there being a fatal variance or a prejudicial variance, but on the – Probably not much difference between the two. It's the same thing in the end. I would disagree, respectfully. The case law is clear in how it states the differences between the two. But the fundamental claim here is that by the jury instruction, it failed. He is deprived of his right of fair notice. And that's the fundamental claim that he raised. I don't care if you call it variance or you call it an amendment. Well, they are two – Call it what you want. It gets down to the root of the issue, his lack – he's alleging a lack of notice. Well, the – And even the State Court of Appeal basically said that there was a constitutional problem here. And the inquiry was whether it was – they used the term substantial rights were violated, which is really nothing more than a prejudicial inquiry.  And the Federal District Courts assumed that the Idaho Court of Appeals found a variance and then went on as is required under – They found a constitutional error. They found a variance in the first instance. They found a constitutional error, correct? They – I'm not sure. They said it was harmless. They did say it was harmless. Right. As is required. And under Palito, as Counsel just said, our inquiry is abrupt. If you – is your argument that there was no constitutional error here? Or that it was waived? We are arguing that – we admit that there was a variance. And – Well, do you admit that it was a constitutional – it was a constitutional violation? That's where – There was a – That's the way I read your brief. Well, there was, and I'm not sure if parsing it says whether a variance carries the signature of a constitutional violation by itself before you go into murder. Just answer my – is it your – I read your brief to mean – Yes. I read your brief to mean that the State Court of Appeal had found a constitutional violation. Yes. And that's your position, correct? Yes. Then the inquiry is, well, was it prejudicial? That's correct. Okay. And the State Court did their analysis, and under Palito, as Counsel just said, our analysis is essentially a Brecht analysis. Absolutely. And that is what the district court did in looking at Brecht to determine whether or not the error there – and you're right, it was a constitutional error – whether or not the error there had a substantial and injurious effect on the determination of the jury's verdict. And in paralleling the reasoning that was done by the Court of Appeals, the district court, the federal district court on its own, came to the same determination that based on the fact that there were two people who testified in this case, the victim testified to a variety of sexual acts under the three specific acts that were charged in the information. She testified at length and to various occurrences. And then she also just almost parenthetically, as the subject of hand to genitalia contact was introduced, when she was asked about that, she threw in, yes, he touched me with his hand on my breast. That was the only reference to breast touching. And I would point out, before I forget, and I don't have the case, but Idaho case law now has made it really, really clear. Breast touching does not constitute lewd and lascivious conduct in the state of Idaho. And if I could ask you a question on this. This abuse, according to her testimony, the victim's testimony, went on for a number of years, right? Yes. A great many years, because she was in the custody of the defendant, right? That's correct. Could the jury have interpreted the testimony to mean that the lewd conduct that they convicted on was kissing or breast fondling? I mean, is that in a realm of possibility? No, it is not. As the federal district court held, that was totally not likely that the jury would have done that. And that is because the testimony that they were given gave them an all-or-nothing choice. They could believe C.H., the victim's testimony, as to everything that she said, or they could not believe her. And in contrast to that, when the defendant testified, he was asked, and I'm quoting here, by the prosecutor, you're telling these people today under oath that none of those things that C.H. testified to today in that chair are true. And he answered, that's right. So he denied everything that C.H. testified to, breast touching, French kissing, everything. And so the jury was put to the all-or-nothing decision, as the federal district court found, whether to believe her at all. And the federal district court said there is no basis to conclude that the jury had any likelihood to have disbelieved any of the three types of lewd conduct that were specified in the information, and then go ahead and believe some other type of lewd and lascivious conduct. Now we've talked about breast touching, and I would just say that in the statute for lewd and lascivious conduct, French kissing does not seem to be, and it is not, part of the same type of touching that is described there. The statute reads, including, but not limited to, genital-to-genital contact, oral-to-genital contact, anal-genital, oral-anal, manual-anal, manual-genital. French kissing is simply not of the type that is listed there. So when the statute says, or any other lewd and lascivious conduct, it certainly has not given them permission to find something has, in contrast, has a low level, has French kissing, to be the basis for lewd and lascivious conduct. Well, that may be well and good, except for counsel's argument, as I understood it, was that, well, those terms were not defined for the benefit of the jury. They were not defined. And to some extent it has not been sorted out what exactly is lewd and lascivious conduct in Idaho. However, the question of whether or not the clause in Instruction 18, or any other lewd and lascivious conduct, constitutes a variance, and that's been determined it is, but it is certainly not a constructive amendment, because by its very terms, or other lewd and lascivious conduct, cannot redefine the charge defense of lewd and lascivious conduct. Well, you would win under interpretation of the Latin maxim of what they eustem generis, or I think they used to call it that, because it's not of the same type. But the question for us is, at least I think a practical one, is it possible in terms of reality that the jury convicted based on the other conduct beyond the three specified types of context? Not at all. As has been mentioned, the prosecutor's argument made it clear that there were three types of contact that he was asking them to convict on. He never mentioned in his closing argument breast-touching or French kissing. There are only the fleeting references to both of those that occurred. That was during her testimony, not during the prosecutor's argument as I read it. The prosecutor ended his argument talking about the three contacts that were specified. He never argued about breast-touching or French kissing in his closing argument. I came up parenthetically. Part of her testimony, not the prosecutor's argument. That's correct. And I would point out that maybe the overriding issue here is that the Fifth Amendment right to presentment and indictment or indictment by a grand jury has never been incorporated to the states through the 14th Amendment Due Process Clause. As counsel is asking for, assuming he's still asking for a constructive amendment issue to be considered, that simply is not available to him. And then I would like to point out the U.S. Supreme Court in Cotton. There's language in Cotton which is parallel, even though it's a federal case. It's a plain error case. And in that case, the U.S. Supreme Court went through the three steps which are parallel to Idaho's fundamental error, pretty much. And then it added a fourth step, and that is whether or not the error seriously affects the fairness, integrity, or public reputation of judicial proceeding. And I would submit to this court that either because the Fifth Amendment grand jury right does not apply or if applied as plain error in following the Cotton steps that the U.S. Supreme Court has mandated, there is beyond the plain error review, there is that fourth step that has to be considered, and that is whether the error seriously affects the fairness. I would submit that based on what this court has heard, based on how the testimony at trial was presented, and based on the federal district court's very recent decision that under Brecht, there was no substantial injuries. Counsel, your time is up. You can complete a sentence. I would ask this court to affirm the federal district court's decision. Thank you. Okay. And now counsel for appellant, Mr. Dockin, you've got some rebuttal time. Thank you, Your Honor. I'd like to address counsel's arguments concerning the all-or-nothing choice that was identified as part and parcel of the decision of the Idaho Court of Appeals in this case and of the federal district judge's decision in this case. We disagree, the appellant disagrees that this was an all-or-nothing decision and have a very difficult time understanding how that could be characterized as an all-or-nothing situation. He denied it, right? He denied it. Flat out. He did deny it. He said he acknowledged that her testimony, he acknowledged her testimony, but he said those are the words of somebody else. He said that. And the point that I would like to make, Your Honor, is how could we possibly know what the jury deliberated upon in that jury room? And that's the point about making this turn on an all-or-nothing type of standard. That's assuming something that cannot be assumed. And I'd like to stress that point to the court here today and get back to one of the last points that I made, and that is, in this case, there was impermissible vouching for a witness. In other words, there was a witness that testified in this case, about the credibility of the only witness in the case that was an unsworn witness. Okay. Counsel, your time is up as well. I'm sorry. Thank you. I'm sorry we've got so many cases this morning that we're going to have to keep you to your time. Let me just say, very nicely argued, the Montoya case shall be submitted, and we wish counsel a safe trip back to Idaho. Thanks for coming.
judges: Fisher, Gould, Paez